James S. THOMAS, Appellant,

v.

Gertrude HOWARD, Appellee.

No. 2690.

Municipal Court of Appeals for the District of Columbia.

Argued March 6, 1961.

Decided April 5, 1961.

Carlisle E. Pratt, Washington, D. C., with whom Verginald L. Dolphin, Washington, D. C., was on the brief, for appellant.

John A. Shorter, Jr., Washington, D. C., with whom Perry W. Howard, Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

CAYTON, Judge.

In this slander suit plaintiff obtained a judgment against her former employer, who, she claimed, had wrongfully charged her with theft. On this appeal we are presented with an interesting question of qualified privilege.

Defendant operated an employment agency and plaintiff was one of his three employment counselors. She interviewed job applicants and when the agency was successful in placing them it was paid a fee. Defendant claimed to have learned that one Clarence Blair had gotten a job through the agency and had paid a fee to one of the counselors. Defendant asked the counselors which one of them had taken Blair's application. Plaintiff replied that she had, but denied that she had gotten him a job or received any money from him.

A few days later plaintiff's husband had a talk with defendant at which time defendant stated plaintiff had taken money from the employment agency. The husband said he did not believe it and wanted to look into the matter.

Defendant testified that Blair later said again that he had paid money to someone in defendant's office. After this second conversation defendant held a meeting with his employees. Present were plaintiff, two other counselors and a bookkeeper. Plaintiff testified that at this meeting defendant said, "You know, your record follows you wherever you go," and "Mrs. Howard took sixty dollars from the agency," and "That is bad business."

After the meeting one of the other counselors cautioned defendant about the seriousness of making accusations without adequate proof and reminded him "there was nothing to show that she had taken the money, no record of it whatsoever." She said she offered to check the employment list to see if the applicant had been placed by the agency and if he had a receipt for what he was supposed to have paid. Defendant replied, "I know that she took the

money, and I accept and acknowledge the fellow's statement that she did so," and "I accept his statement, and I think she took the money. I said so then and I say so now."

That evening, according to her husband, plaintiff came home crying and told what had happened at the meeting. The following morning defendant called the husband and said he wanted to see him. When he arrived defendant said, "I am finished with your wife. She has taken sixty dollars from a fellow by the name of Clarence Blair * * * and she did not turn the money into the office." The husband demanded that Blair be brought in to confront his wife, but defendant said, "I am not going to bring nobody in, I know she done it and that is all there is to it."

At trial Blair testified that he had gone to the agency to fill out an application, but had never gotten a job through it, and had never paid any money to anyone there. He said he had found his job through a newspaper advertisement. He said that all he ever told defendant was that he had been taken care of at the office, that he was working, where he worked and how much he was making. Defense produced an affidavit signed by Blair after the suit had been filed, stating that he paid $60 to Mrs. Howard and had told defendant Thomas about it soon afterwards. Blair repudiated the statement and insisted that he thought he was signing a receipt for wages due him by defendant. (The trial judge commented, "I see no point in this kind of a statement unless it was to prepare a defense.") We have recited the testimony in some detail in order to relate the factual situation understandably to the applicable legal principles.

 Defendant claims his statements were privileged because of the employer-employee relationship. There is no doubt that an employer has a right to inquire into the manner in which his employees are conducting his affairs without subjecting himself to liability for defamation. It may be

conceded that defendant had sóme reason to suspect something was amiss in his office after his alleged conversation with Blair. We may also agree that his initial comments to plaintiff after he learned she had taken Blair's application were privileged, even though they may have contained an implication of theft. But this was a conditional or qualified privilege only, and was subject to loss or destruction by a showing of excessive publication or express malice. Barr v. Matteo, 103 U.S.App.D.C. 176, 256 F.2d 890.

 From the facts recited we think it evident the court could have found that defendant so conducted himself as to lose his qualified privilege. Considering the circumstances under which the office meeting was held it served no useful business purpose. Apparently without attempting to reconcile the conflicting stories defendant called the meeting and again accused plaintiff of theft, warned that her reputation would suffer, and thereafter refused to give her reasonable opportunity to refute the charges.

■■ Express malice may be shown by the language itself as well as by extrinsic evidence. Dickins v. International Brotherhood of Teamsters, 84 U.S.App.D.C. 51, 171 F.2d 21; National Disabled Soldiers' League v. Haan, 55 App.D.C. 243, 4 F.2d 436. It was for the trier of fact to determine whether the publication was designedly excessive and whether the words were motivated by ill-will. The effect of the court's ruling on this issue was to hold that defendant had lost the protection of the qualified privilege and we think the record supports that finding.

The only other assignment of error concerns the admission of certain testimony. One of plaintiff's witnesses testified that she refused plaintiff a job because she heard two customers in her shop discussing this affair, and heard defendant mentioned by name as having accused plaintiff of dishonesty. Defendant objected to this as hearsay.

■ The record does not clearly indicate the purpose for which this testimony was offered. If it was to show publication it may have been prejudicial had there not already been other evidence on that subject. But if it went to show damage to plaintiff's reputation it was admissible. At any rate, the court was careful to curtail the questioning of this witness before it developed to any harmful extent, and the questions and answers did not go far enough to become prejudicial.

Affirmed.