Sidney SMITH, Appellant,

v.

DISTRICT OF COLUMBIA et al., Appellees.

WASHINGTON HOSPITAL CENTER et al., Appellants,

v.

Sidney SMITH, Appellee.

Nos. 12119, 12120.

District of Columbia Court of Appeals.

Argued March 7, 1978.

Decided Feb. 21, 1979.

A. Palmer Ifill, Washington, D. C., for appellant in No. 12119 and appellee in No. 12120.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the case was briefed and argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees District of Columbia, et al., in No. 12119.

Hal H. Thurston, with whom J. Joseph Barse, Washington, D. C., was on the brief, for Washington Hospital Center, et al., appellees in No. 12119 and appellants in No. 12120.

Before GALLAGHER and YEAGLEY, Associate Judges, and MOULTRIE, Chief Judge, Superior Court of the District of Columbia.*

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).  Judge Moultrie was designated Chief Judge of the Superior Court of the District of Columbia effective June 22, 1978.

GALLAGHER, Associate Judge:

Sidney Smith sued the Washington Hospital Center (WHC) and three of its employees—Sergeant Joseph Brock, Nurse Nona Dickson and Nurse Doreen Dixon—for slander and for procuring his false arrest and false imprisonment. He also sued the District of Columbia and one of its employees—Officer James Trainor—for assault and battery and for false arrest and false imprisonment.[1] At trial the court granted the motion on behalf of the District of Columbia and Trainor for a directed verdict on the issue of assault and battery. The jury then returned the following verdicts and awards for plaintiff: (1) against Sgt. Brock for slander—$750; (2) against Nurse Dickson for slander—$750; (3) against WHC for slander (*respondeat superior*)—$750; and (4) against Brock, Dickson and WHC for procuring his false arrest and imprisonment—$4,500. The jury rendered verdicts in favor of the remaining defendants on all counts. Upon motion, however, the court then granted judgment notwithstanding the verdict to Brock on the slander count and to Brock, Dickson, and WHC on the false arrest and imprisonment counts.[2] Consequently, final judgment for plaintiff was in the amount of $750 on the slander count against Nurse Dickson and WHC.[3] Smith appeals the grant of judgment notwithstanding the verdict to the various defendants, as well as the directed verdict and jury verdict in favor of the District of Columbia and Trainor. WHC and Dickson cross-appeal from the court's denial of their motion for judgment notwithstanding the verdict on the slander counts.[4]

We must review: (1) the rulings of the trial court on the motions for (a) the directed verdict in favor of D.C. and Trainor on the assault and battery count, and (b) judgment notwithstanding the verdict (and the alternative motions for a new trial) on various other counts; and determine (2) whether the jury verdict in favor of D.C. and Trainor on the false arrest and imprisonment counts should stand.[5]

■ Turning to the contested directed verdict in favor of the District of Columbia and Officer Trainor on the assault and battery count, it is axiomatic that we must view the evidence and all reasonable inferences therefrom in the light most favorable to the party appealing its grant. *St. Paul Fire & Marine Insurance Co. v. James G. Davis Construction Corp.*, D.C.App., 350 A.2d 751, 752 (1976). If we find evidence from which a jury could reasonably find for the appealing party, we must reverse the grant of the directed verdict. *See Lee v. Fisco Enterprises, Inc.*, D.C.App., 233 A.2d 44, 45 (1967); *Birchall v. Capital Transit Co.*, D.C.Mun.App., 34 A.2d 624, 625 (1943).

All witnesses agree that, in making the arrest, a pushing and shoving match developed between the officer and appellant. There is no dispute that appellant initially offered resistance, though there is conflict on the degree of resistance to the arrest.

■ The officer was of course entitled to use reasonable force to effect and maintain the arrest. *Wade v. District of Columbia*, D.C.App., 310 A.2d 857, 862 (1973) (en banc). Our review of the record leads us to conclude the trial court did not err as a matter of law in directing the verdict for the District of Columbia and Officer Trainor on the assault and battery count.

1. The court considered the claims of false arrest and false imprisonment as constituting a single tort by each set of defendants.

2. It granted their motions for a new trial, in the alternative, in the event that any of its rulings on the motions for judgment notwithstanding the verdict were to be reversed on appeal. Since we affirm, there of course will be no new trial.

3. These defendants are jointly liable for this award, as WHC's liability stems from its posi-

tion as her employer under the theory of *respondeat superior*.

4. For reasons which will be apparent, we conclude the cross-appeal lacks merit.

5. Appellant Smith also raises three other issues, relating to the defendants' purported waiver of the defense of qualified privilege, the exclusion of certain evidence, and the grant of a directed verdict on the issue of punitive damages. We find these claims to be without substance.

On the remaining issues, the trial court issued a well-reasoned, comprehensive memorandum opinion (105 Wash.D.L.Rptr. 753, May 3, 1977) which we agree with and adopt. (See Appendix A.)[6]

*Affirmed.*

## APPENDIX A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Action No. 9310–75

Sidney Smith, plaintiff,

v.

District of Columbia, et al., defendants.

### OPINION

This matter is before the Court upon defendants' motions for judgment *non obstante veredicto* and, alternatively, for a new trial.

Plaintiff Sidney Smith is now and was at the time of this incident an employee of the Washington Hospital Center, Inc. Defendants are Nona Dickson, Assistant Director of Nursing Services, Sgt. Joseph Brock, a security officer, both employees of the Washington Hospital Center, and the Hospital Center itself.

The jury returned verdicts in favor of plaintiff in the amount of $750.00 against Nurse Dickson and Sgt. Brock upon plaintiff's claim that each of them had uttered slanderous statements concerning him. The jury awarded plaintiff a like amount against the defendant Hospital Center apparently concluding upon the principle of *respondeat superior* that either Nurse Dick-

son or Sgt. Brock was acting within the scope of his or her agency at the time one of the alleged slanderous statements was made.

Each of these defendants was also charged by plaintiff with false arrest and imprisonment. Upon this count too the jury's verdict was in favor of plaintiff in the amount of $4,500.00.

Defendants' motions for judgment n. o. v. or for a new trial are aimed at all of the jury's verdicts.[1] Defendants' judgment n. o. v. motions assert the jury verdicts are erroneous as a matter of law.

■ In considering these motions this Court must, of course, be guided by the oft-quoted fundamentals which require that the evidence and all inferences reasonably deducible therefrom be considered in the light most favorable to plaintiff, *District of Columbia v. Jones,* D.C.App., 265 A.2d 594 (1970). A judgment n. o. v. is appropriate only where "the evidence is so one-sided as to leave no room for doubt . . .". *McWilliams v. Shepard,* 75 U.S.App.D.C. 334, 335, 127 F.2d 18, 19 (1942); *Howard v. Safeway Stores, Inc.,* D.C.App., 263 A.2d 656 (1970). If upon the evidence so considered reasonable men might differ the jury verdicts must stand. If, however, no reasonable man could conclude in favor of plaintiff, the motions for judgment n. o. v. must be granted. Such motions, then, raise only questions of law, *Reading v. Faucon,* D.C.Mun.App., 134 A.2d 376 (1957), and only if plaintiff has failed to make his case, may this Court grant the motions. *District of Columbia v. Jones, supra* at 595.

---

6. We have deleted on page 18 a factual statement in the trial court's attached opinion which was inaccurate. This deletion does not affect our view of the issues.

1. Defendants moved for directed verdicts both at the close of plaintiff's case in chief and at the conclusion of all the evidence. Both motions were denied and consistent with admonition of appellate tribunals the case went to the jury. *Resnick v. Wolfe & Cohen, Inc.,* D.C.Mun.App., 49 A.2d 809 (1946); *District of Columbia v. Jones,* D.C.App., 265 A.2d 594 (1970). See also, *Pugh v. Baltimore and O. R. Co.,* 92 U.S.

App.D.C. 198, 202, 204 F.2d 391, 396 (1963) where the Court stated:

" . . . [W]e think it well to add that in a case of this kind, if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury. If a verdict is deemed by the court to be contrary to the evidence, judgment may be entered *non obstante veredicto.* Action by this court in the event of an appeal from such a judgment would not entail the trouble and expense of a new trial."

Defendants' alternative motions for a new trial urge that the jury verdicts were contrary to the weight of the evidence and excessive as a matter of law. "Although the cases are not consistent in usage, some cases using the phrase 'clear weight' and others using the phrase 'overwhelming weight' or 'overwhelming evidence', it seems clear that the jury's verdict[s] must at least be against the great weight of the evidence before a new trial may be granted." *Cities Service Oil Co. v. Launey,* 403 F.2d 537, 540 (5th Cir. 1968). Otherwise, the role of the jury as the principal trier of fact is destroyed. *Firemen's Fund Insurance Company v. Aalco Wrecking Company, Inc.,* 466 F.2d 179 (8th Cir. 1972).

The evidence adduced at trial, taken in the light most favorable to plaintiff reveals the following occurrences.

## I.

On September 23, 1975 plaintiff was employed as an orderly at the defendant Hospital Center located here in the District of Columbia. On that date, at about 4 A.M., he was summoned by nurse Doreen Dixon[2] to come to Ward 4D on the fourth floor of the hospital to pick up a patient's clothing and personal valuables. Plaintiff responded and received from nurse Dixon a paper bag containing the patient's clothes and other valuables. Attached to the bag was an inventory sheet listing all items contained in the bag. The slip listed the patient's property as including a purse containing seven one dollar bills and one dollar and sixty-six cents in change.

Plaintiff was directed by nurse Dixon to take the personal belongings of the patient to the receiving and storage room on the second floor. When plaintiff arrived at this destination he delivered the bag and its contents to defendant Nona Dickson, the Assistant Director of Nursing Services at the Hospital Center. He then returned to the orderly room.

Mrs. Dickson and a second nurse on duty with her promptly checked the contents of the bag against the inventory sheet. The money allegedly in the purse was no longer there. Nurse Dickson and her associate nurse promptly communicated with nurse Dixon on Ward 4D and were informed by nurse Dixon and another nurse named Ross that when plaintiff received the paper bag from them the money was in the purse.

As a consequence, plaintiff was called on the hospital's speaker system and directed to report to defendant nurse Dickson. When he arrived, according to his testimony, both nurses, Dickson and Dixon, accused him of stealing the patient's money. In his testimony, plaintiff acknowledged that he had had sole possession of the patient's property from the time he received it from nurse Dixon until he delivered it to nurse Dickson.

Defendant Sgt. Brock, one of the hospital's security officers was also on the scene. According to plaintiff, either Sgt. Brock or nurse Dickson told him to empty his pockets on to the counter.[3] Mrs. Dickson told plaintiff to "go ahead and put the money back and nothing will happen"; that "no registered nurse took the money".

After this confrontation Sgt. Brock told plaintiff to return to the orderly room. The Sgt. then summoned the Metropolitan Police as a routine matter because valuables belonging to a patient were missing.

Officer James D. Trainor of the Metropolitan Police Department in due course received a radio run and responded to the hospital.[4] Sgt. Brock told Officer Trainor

---

2. Ms. Dixon was also a defendant to this action. Plaintiff claimed that she, too, had slandered him and participated in his false arrest and imprisonment. The jury concluded contrariwise and found in Ms. Dixon's favor.

3. Plaintiff did as requested. He had in his possession more than seven one dollar bills and an amount in change in excess of $1.66.

4. Officer Trainor and the District of Columbia were also named as defendants by plaintiff under claims of assault, false arrest and imprisonment. At the conclusion of plaintiff's case the Court directed a verdict in favor of both of these defendants on the assault charge. The jury found in their favor on the arrest and imprisonment claim.

the facts as he knew them from talking to the nurses. He also told the officer that plaintiff was suspected of stealing the patient's money. Officer Trainor thereupon arrested plaintiff. Sgt. Brock neither ordered that arrest nor did he participate in it.

Plaintiff testified, without objection, that when in the custody of Officer Trainor the officer told him he was being arrested because nurses Dickson and Dixon, and Sgt. Brock had told him plaintiff stole the money.[5]

That afternoon plaintiff was released from the custody of the Metropolitan Police Department at the behest of the Washington Hospital Center after some of its personnel had discussed the matter with representatives of the United States Attorney's Office.

Upon these facts the Court will consider first, defendants' motions for judgment n. o. v. as they relate to the jury's verdicts finding nurse Dickson, Sgt. Brock and the Hospital Center responsible for plaintiff's alleged false arrest and imprisonment, then to the jury's verdict that Sgt. Brock had slandered plaintiff, and finally, the jury's like conclusion respecting nurse Dickson.

## II.

Plaintiff has not contended that Sgt. Brock and nurse Dickson, or either of them actually participated in his purported unlawful detention. Rather, he asserts that each of them engaged in a course of conduct which instigated or procured his unlawful arrest and imprisonment. In support of this contention plaintiff testified that Officer Trainor told him he was being arrested because Sgt. Brock and nurses Dickson and Dixon had accused him of stealing the money. Assuming those accusations to be true, the question to be faced is whether the accusations give rise to a meritorious claim of false arrest and imprisonment. In addressing this issue a question of considerable importance must be faced,

viz: What, if any, protection from civil liability should be afforded citizens who honestly, although mistakenly, report criminal activity to the police or public prosecutor?

It is settled that merely giving facts to an officer showing that an offense has been committed and that a person may be suspected of its commission does not comprise the tort of false imprisonment. *Bass v. Dunbar House, Inc.,* D.C.Mun.App., 161 A.2d 50 (1960). More needs to be shown.

Liability is incurred for the procuring of a false arrest and imprisonment if by acts or words, one directs, requests, invites or encourages the unlawful detention of another. Restatement, 2d, Torts, § 45A; *Bass v. Dunbar House, Inc., supra.* The comment to Section 45A of the Restatement suggests that procurement of false imprisonment is the equivalent in words or conduct to "Officer, arrest that man". To accuse a person of committing a crime, however slanderous it may be, is not enough to sustain a claim of false arrest so long as the decision whether to make the arrest remains with the police officer and is without the persuasion or influence of the accuser.

The Supreme Court of Arkansas in *Moon v. Sperry & Hutchinson,* 250 Ark. 453, 465 S.W.2d 330 (1971) adopted Section 45A of the Restatement in determining an employer's liability for the acts of an employee which brought about the brief detention of a customer. The employee had seen what she believed to be a gun protruding from the customer's pocket and she immediately called the police. When the police arrived, the employee identified the customer as "the man with a gun". The customer was detained for a brief period to determine whether the employee's accusation was accurate. When no gun was found, the customer was allowed to leave the store.

The undisputed acts of the employee of notifying the police of suspected criminal

---

5. Officer Trainor, in his testimony, denied that such a statement had been made to him by anyone. Apparently the jury chose to believe plaintiff's testimony and it is in that light that the Court must consider defendants' motions.

activity and identifying the suspect, were held to be insufficient to make out a case of false arrest and imprisonment. In *Moon* there were no allegations suggesting that the acts of the police officer in arresting plaintiff were not of his own volition, or alternatively that the arrest was requested by defendant, or its employee.

In considering the question of unlawful detention, several jurisdictions have concerned themselves with the motive of the defendant in determining the issue of liability. For example, in *Turner v. Mellon,* 41 Cal.2d 45, 257 P.2d 15 (1953) an employee of Western Union observed an individual on the street who resembled a man who had robbed Western Union on four occasions. According to plaintiff, the defendant stated in response to questioning by police regarding the identity of the suspect, "Yes, that is the man." The suspect was arrested and held until the next day when it became clear that the suspect had been incorrectly identified. Later the arrested suspect filed an action against Western Union and its employee alleging false imprisonment, and the jury returned a verdict in favor of plaintiff. The Supreme Court of California held that it would be unjust to impose liability for an honest mistake in identification even where that identification may have been the principal cause of the erroneous arrest. The overriding public policy as perceived by the Court was stated as follows:

"We think it serves the public interest . . . that citizens who have been criminally wronged may without fear of civil reprisal for an honest mistake, report to the police or public prosecutor the facts of a crime and in good faith, without malice, identify to the best of their ability to such public officers the perpetrator of the crime. Investigation and action from then on are the responsibility of the public employees who are skilled in that work and who are paid to perform it." [257 P.2d at 17].

See also *McCord v. Tielsch,* 14 Wash.App. 564, 544 P.2d 56 (1975); *Shires v. Cobb,* 271 Or. 769, 534 P.2d 188 (1975).[6]

A close examination of all the evidence in this case in the light most favorable to the plaintiff does not support plaintiff's contention that defendants Dickson or Brock arrested him or that the judgment Officer Trainor made to arrest plaintiff was in response to persuasion or influence by them. At most these defendants mistakenly identified plaintiff as the individual responsible for the taking of the patient's money. The decision whether to arrest plaintiff or to allow him to remain at liberty was, at all times, the independent judgment of Officer Trainor of the Metropolitan Police Department.

We need not be overly concerned here with the issue of whether a malicious reporting of alleged criminal activity to law enforcement authorities would, in similar circumstances, give rise to a *prima facie* claim of false arrest and imprisonment for there is not a scintilla of evidence to sustain the view that nurse Dickson or Sgt. Brock acted maliciously in what they may have said to Officer Trainor. In this regard we note that malice is defined as:

". . . the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Ford Motor Credit Company v. Holland,* D.C.App., 367 A.2d 1311.

Here the facts as known to nurse Dickson and Sgt. Brock portrayed plaintiff as the probable perpetrator of the crime of petit

---

**6.** *Cf. Smith v. Tucker,* D.C.App., 304 A.2d 303 (1973) an action for malicious prosecution. There our Court of Appeals reversed a money judgment awarded to plaintiff against a defendant who had in honest belief reported plaintiff to police as the one who had burglarized her tavern. Citing *Carroll v. Parry,* 48 U.S.App. D.C. 453, 462 (1919) our Court quoted:

"[W]here . . . a crime of a serious nature has been committed and from the admitted facts or uncontradicted evidence it appears that the injured party has done nothing more than take reasonable and proper steps for the discovery and apprehension of the criminal that party merits, and should receive, the protection of the court. [304 A.2d at 308.]"

larceny. He had been given a patient's personal property soon after it had been inventoried by two nurses. According to the inventory slip prepared by the two nurses, the patient's personal effects included seven dollars in one dollar bills and one dollar and sixty-six cents in change. This money, contained in a purse, was in the bag given to plaintiff. When plaintiff delivered the property to its destination on the second floor, the patient's money was no longer in the purse. Although the conduct of Mrs. Dickson and Sgt. Brock in accusing Mr. Smith of the crime of petit larceny, as testified to by plaintiff, may reflect poor judgment on their part it cannot be said that in making the accusations they acted "with such a conscious indifference or reckless disregard" of the truth so as to constitute ill will. Rather, their statements represent a good faith effort to report to a law enforcement officer, in the interests of their injured employer, the Washington Hospital Center, the facts of a crime and to identify to the best of their abilities, albeit mistakenly, the perpetrator of that crime. For such actions, one does not incur liability and consequently the jury's verdict against the interests of nurse Dickson and Sgt. Brock was clearly erroneous as a matter of law. The Court, therefore, will grant their motions and that of the Washington Hospital Center for judgment *non obstante veredicto*.

### III.

Sgt. Brock's motion for judgment n. o. v. also seeks to set aside the jury's award to plaintiff for slander in the amount of seven hundred and fifty dollars for the reason that even if he did tell Officer Trainor that plaintiff had stolen the patient's money, his statement was qualifiedly privileged and he is entitled to judgment as a matter of law.

Slander is defined as an oral communication which "tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community". *Olinger v. American Savings and Loan Association,* 133 U.S.App.D.C. 107, 109, 409 F.2d 142, 144 (1969).

The slanderous statement attributed to Sgt. Brock by plaintiff is the accusatory words made to Officer Trainor that plaintiff had stolen the patient's money.[7] Such words, charging another with the commission of a criminal act, are actionable *per se* unless the statement, at the time made, was qualifiedly privileged. *Farnum v. Colbert,* D.C.App., 293 A.2d 279 (1972). To be qualifiedly privileged the communication must be one made in good faith upon a subject matter "in which the party communicating has an interest or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty . . . ." *May Department Stores Company v. Devercelli,* 314 A.2d 767, 773 (D.C.App., 1973).[8] Or as the distinguished and scholarly United States District Court Judge Alexander Holtzoff put it:

"Qualified privilege exists only in a situation in which there is reasonable ground for making the alleged defamatory statement, either in the legitimate interest of the person uttering it, or of the person to whom it is communicated. For example, one who in the regular course of business is asked by a prospective employer, or a potential creditor, for information concerning a person, is entitled to the defense of qualified privilege if his reply would otherwise be regarded as defamatory." *Collins v. Brown,* 268 F.Supp. 198, 200 (D.D.C., 1967).

Thus if an employer has reason to suspect that an employee is stealing his

---

7. Plaintiff also testified that he was approached by either Sgt. Brock or Mrs. Dickson and told to empty his pockets on to the counter. Yet, no further testimony was introduced by plaintiff to enable the jury or the Court to determine that Sgt. Brock was the probable declarer of this statement.

8. See generally, *Brown v. Collins,* 131 U.S.App. D.C. 68, 402 F.2d 209 (1968); see also *Manbeck v. Ostrowski,* 128 U.S.App.D.C. 1, 384 F.2d 970 (1967) where the Court of Appeals for this circuit sustained the application of qualified privilege where the president of a labor union allegedly called a union attorney a "shyster" during a union meeting.

property, the employer may inquire into the manner in which his employees are conducting his affairs without subjecting himself to liability for defamation. Even though the inquiry may contain an accusation of criminal activity it is qualifiedly privileged, and is not actionable without a showing of excessive publication or express malice. *Thomas v. Howard,* D.C.App., 168 A.2d 908 (1961).

As a security guard for the Washington Hospital Center, Sgt. Brock was concerned with and responsible for the detection of criminal activity occurring at the Hospital Center as well as the apprehension of those believed to be responsible for it.[9] Thus, any communication made by Sgt. Brock to a police officer of the Metropolitan Police Department or to his superiors in the course of his duties regarding suspected criminal wrongdoing at the hospital is qualifiedly privileged. The Sgt. has a legitimate interest in making the statement, and both the Metropolitan Police Department and his employers have a legitimate interest in receiving the communication. And so it is that in the absence of malice or excessive publication Sgt. Brock is not liable to plaintiff for the statements made by him. And as the record reflects, no evidence whatever was introduced by plaintiff to sustain the contention that Sgt. Brock acted "without just cause or excuse, with such a conscious indifference or reckless disregard" of the results of his communication as to constitute ill will. *Ford Motor Credit Company v. Holland, supra.* Quite to the contrary, the evidence clearly demonstrates that Sgt. Brock was acting properly in the interests of his duties and his obligation to his employer, the Washington Hospital Center and the law enforcement authorities of the District of Columbia. Consequently, Sgt. Brock's motion for judgment n. o. v. on the slander claim must also be granted.

## IV.

We turn now to the motion for judgment n. o. v. and new trial filed in behalf of defendant Mrs. Nona Dickson, Assistant Director of Nursing Services at the Washington Hospital Center. The jury awarded damages to plaintiff in the amount of seven hundred and fifty dollars for the alleged slanderous statements made by her.

The favorable evidence discloses that after the alleged larceny had been discovered, Mrs. Dickson requested plaintiff to report to the nurses' office. When plaintiff appeared, Mrs. Dickson was in the office with Sgt. Brock and a companion duty nurse. Plaintiff testified that he was told by either Sgt. Brock or defendant Dickson to empty his pockets on to the counter and that Mrs. Dickson told him to "go ahead and put the money back and nothing will happen", for "no registered nurse took the money."

This statement of defendant Dickson clearly imputes to plaintiff in the presence of others the commission of a crime. Thus, unless Mrs. Dickson's statement was conditionally privileged, plaintiff is entitled to the award of money damages made by the jury.

Mrs. Dickson was employed by the hospital as Assistant Director of Nursing Services. . . . The presence of security guards at the hospital logically could lead a jury to conclude that investigations of alleged criminal activities are the sole responsibility of the security force. Irrespective of this, it still cannot be said upon the record in this case that the jury's determination that Mrs. Dickson's duties did not include the questioning of hospital personnel regarding the theft of a patient's property is contrary to the great weight of the evidence. Although Mrs. Dickson may have exceeded her duties in questioning the hospital staff, her actions may nonetheless be imputed to her employer under the doctrine of *respondeat superior* if she was motivated by the intent to promote her employer's

---

**9.** Sgt. Brock, an authorized special police officer, testified that had he believed probable cause existed to arrest plaintiff for petit larceny he would have made the arrest. Armed with the same knowledge as that of Officer Trainor of the Metropolitan Police Department, Sgt. Brock was in error in concluding that probable cause for plaintiff's arrest was lacking.

interests. *Meyers v. National Detective Agency, Inc.,* D.C.App., 281 A.2d 435 (1971). A finding by the jury that she was so motivated is well supported in the record. Thus, the jury's verdict in favor of the plaintiff on the claim of slander against both Mrs. Nona Dickson and the Washington Hospital Center must be sustained.[10] Their motions for judgment. n. o. v. and alternatively, for a new trial on the slander claim must be denied.

## V.

Finally, the Court must deal with the remaining alternative motions for a new trial filed in behalf of defendants Dickson, Brock and the Hospital Center relating to the alleged false arrest and imprisonment claim, and that of Sgt. Brock on the slander count. *Casper v. Barber & Ross Company,* 109 U.S.App.D.C. 395, 288 F.2d 379 (1961).

In the event this action finds its way to the District of Columbia Court of Appeals it may be that that Court will conclude us in error in granting judgments n. o. v. For this reason this Court is of the view that the motions for a new trial must be granted for the jury's verdicts in favor of the plaintiff on these claims are against the great weight of the evidence.

Accordingly, judgments will be entered consistent with this opinion.

DATED: April 16, 1977

/s/ Joseph M. Hannon
JOSEPH M. HANNON
Judge

---

10. It cannot be stated unequivocally whether the jury's award to plaintiff against the Washington Hospital Center of $750.00 represents a finding that Mrs. Dickson's alleged slanderous statement is to be imputed to the Hospital Center or a finding that Sgt. Brock's statements respecting plaintiff are to be imputed to the Hospital Center. Thus, the jury's verdict against the Hospital Center on the slander claim must stand.