**FORD MOTOR CREDIT COMPANY, a corporation, Appellant,**

v.

**Reginald L. HOLLAND and Jyl C. Holland, Appellees.**

**No. 10023.**

District of Columbia Court of Appeals.

Argued July 20, 1976.

Decided Jan. 10, 1977.

---

Laidler B. Mackall, Washington, D.C., with whom William H. Briggs, Jr., Washington, D.C., was on the brief, for appellant.

Solomon L. Margolis, Washington, D.C., with whom Mark J. Wishner, Washington, D.C., was on the brief, for appellees.

Before KELLY and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

KELLY, Associate Judge:

In this libel action against appellant Ford Motor Credit Company (Ford Credit), a jury awarded to appellees Reginald L. and Jyl C. Holland the sums of $50,000 in compensatory and $100,000 in punitive damages. At trial, Ford Credit's motions for a directed verdict, made at the close of the Hollands' case and again at the conclusion of its own, were denied. Its post-trial motions for judgment notwithstanding the verdict and for a new trial were also denied. Ford Credit appeals these rulings on a number of grounds, only one of which we address as dispositive of this appeal.

I.

The undisputed facts are that on April 6, 1970, the Hollands bought a 1970 Ford Maverick from Academy Ford Sales, Inc., an authorized Ford Motor Company dealer in Laurel, Maryland. To finance the car the Hollands arranged through the dealer for a retail installment sales contract, with the car as collateral, calling for payment in

36 monthly installments. The first payment under the contract was due May 16, 1970. On April 14, 1970, the installment sales contract was assigned to appellant Ford Credit.

Early in May of 1970 the Hollands were driving the car on the New Jersey Turnpike when the engine "blew up". The car was towed to Reliable Garage, Inc., a Ford Motor Company dealer in Swedesboro, New Jersey, where the Hollands left it. For some months thereafter the Hollands unsuccessfully attempted to have Academy Ford or Ford Motor Company repair or replace the car. Meanwhile, Ford Credit requested payments under the contract, but because of what they considered an unjustified lack of cooperation by Academy Ford and Ford Motor Company the Hollands refused to make any such payments, stating that they no longer had any interest in keeping the car.

The Hollands were informed by a notice of repossession dated August 5, 1970 that Ford Credit had repossessed the car through its Camden, New Jersey branch office. The vehicle was sold to a third party and the Hollands received a statement of sale dated September 10, 1970, showing that the car had been sold for $1,600. The Hollands' account was credited with that amount plus appropriate insurance refunds, and the balance remaining under the contract was $1,063.75. Shortly after the repossession, Ford Credit sent the following routine credit report to Credit Bureau, Inc., in Washington, D.C.:

Account No. BJ A128 K037; Account opened 04–13–70; High credit—$2,820.-00; 36 payments at $78.60; Collateral—1970 Ford Maverick, Vehicle repossessed —08–05–70.

The words "Vehicle repossessed" in this report constitute the alleged libel in this action.

Ford Credit continued its attempt to collect the balance of the Holland account and subsequently accepted a settlement offer of $600, payable in six equal monthly installments. The Hollands completed these payments in August 1971.

In the interim, on April 30, 1971, the Hollands applied to Commercial Credit Corporation for a $5,500 loan, showing Mr. Victor Kraft, the Commercial Credit representative with whom they dealt, all of their correspondence with Ford Credit. Kraft testified at trial that he made a credit check on the Hollands and refused their application for the loan on the basis of the Credit Bureau report. He also testified under cross-examination that even had he known of the subsequent settlement he would have refused the loan because of the reported repossession.

By letter dated June 30, 1971 the Hollands wrote to Ford Credit requesting that their credit record be corrected to show that they had settled their account with Ford. Ford replied in a letter dated August 18, 1971 that it was having its branch office notify the Credit Bureau of the settlement. Ford also gave the Hollands permission to use the August 18 letter in making any further loan applications.

Acknowledging the undisputed facts and the favorable inferences to be drawn therefrom for the Hollands, Ford Credit argues, *inter alia,* that there was insufficient evidence to reach the jury on two separate and crucial elements of the plaintiff's case: (1) a showing that the allegedly libelous words were false, and (2) a showing of the actual malice necessary to overcome the defense of qualified privilege. We hold that there was insufficient evidence of malice to submit the question to the jury.[1] Absent malice, qualified privilege was a complete defense to the libel action and Ford Credit was entitled to the judgment as a matter of law.

1. It is well settled that truth is a complete defense to libel. *Olinger v. American Savings & Loan Association,* 133 U.S.App.D.C. 107,

409 F.2d 142 (1969); *Clark v. Pearson,* 248 F.Supp. 188 (D.D.C.1965). Because we find error on the malice issue, we do not decide

**1314** ■■■■■■■■■■■■■■■■■■■■

## II.

■■■ The parties concede that the credit communication in question is qualifiedly privileged,[2] a complete defense. to a charge of libel "unless it is made in bad faith or for an improper purpose." *Watwood v. Stone's Mercantile Agency, Inc.*, 90 U.S.App.D.C. 156, 157, 194 F.2d 160, 161, *cert. denied*, 344 U.S. 821, 73 S.Ct. 18, 97 L.Ed. 639 (1952). They also recognize that the burden is upon the plaintiff to prove malice whenever it is a necessary element in a defamation action.[3] Moreover, when a communication is privileged, a "defendant will be presumed to have been actuated by pure motives in its publication." *Ashford v. Evening Star Newspaper Company*, 41 App.D.C. 395, 405 (1914).

> The communication being privileged, defendant will be presumed to have been actuated by pure motives in its publication. In order to rebut this presumption, express malice or malice in fact must be shown. This may appear from the face of the publication or from extrinsic proof. . . . Before the inference of express malice can be indulged, the publication must, in comment, be so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that defendant was actuated by express malice. . . . [*Ibid.*]

Accordingly, the question here is whether the Hollands produced sufficient evidence of malice to justify submission of the issue to the jury.

With respect to malice as it relates to qualified privilege in the area of libel, "all definitions in substance come down to the equivalent of bad faith." *H. E. Crawford Co. v. Dun & Bradstreet, Inc.*, 241 F.2d 387, 395 (4th Cir. 1957). It is

> the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will. [*Dun & Bradstreet, Inc. v. Robinson*, 233 Ark. 168, 345 S.W.2d 34, 38 (1961).]

■■■ A concept of reasonableness is applied, meaning that the existence of the privilege is said to depend on the facts as they *reasonably* appear to the person whose liability is in question. *Watwood v. Stone's Mercantile Agency, Inc., supra.* A qualified privilege will exist only if the publisher of the alleged defamation believes his statements to be true and has reasonable grounds for this belief. *Afro-American Publishing Co. v. Jaffe*, 125 U.S.App.D.C. 70, 77, 366 F.2d 649, 656 (1966). It is nevertheless evident that for an act to be *un*reasonable within this context it must be more than negligent. *E. g., H. E. Crawford Co. v. Dun & Bradstreet, Inc., supra. See also Johns v. Associated Aviation Underwriters*, 203 F.2d 208 (5th Cir. 1953). The standard to be applied in measuring sufficiency, as stated in *May Department Stores Company, Inc. v. Devercelli*, D.C.App., 314 A.2d 767 (1973), is that

> . . . on an occasion of qualified privilege ". . . if the language of the communication, and the circumstances attending its publication by the defendant are as consistent with the nonexistence of malice as with its existence, there is no issue for the jury, and it is

---

whether the words "Vehicle repossessed", when literally true, can reasonably be said to bear such connotations of uncreditworthiness that factual truth would not serve as a defense.

2. *Watwood v. Credit Bureau, Inc.*, D.C.Mun. App., 97 A.2d 460 (1953); *Watwood v. Stone's Mercantile Agency, Inc.*, 90 U.S.App.

D.C. 156, 194 F.2d 160, *cert. denied*, 344 U.S. 821, 73 S.Ct. 18, 97 L.Ed. 639 (1952); *Blake v. Trainer*, 79 U.S.App.D.C. 360, 148 F.2d 10 (1945).

3. *Potts v. Dies*, 77 U.S.App.D.C. 92, 132 F.2d 734 (1942), *cert. denied*, 319 U.S. 762, 63 S. Ct. 1316, 87 L.Ed. 1713 (1943).

the duty of the trial court to direct a verdict for the defendant." . . . [*Id.* at 774, quoting *National Disabled Soldiers' League, Inc. v. Haan*, 55 App. D.C. 243, 248–249, 4 F.2d 436, 441–442 (1925).]

The alleged slander in *May* occurred while defendant's agents questioned a suspected shoplifter. The agents were performing in good faith what they reasonably perceived to be their assigned duty, an activity protected by qualified privilege. No evidence of malice was present and this court held that a directed verdict for the defendant on the libel claim was in order.

The qualified privilege of fair comment was invoked in *Fisher v. Washington Post Company*, D.C.App., 212 A.2d 335 (1965), as a defense to a libel charge where the paper had published an article criticizing the plaintiff's art work. While there was some factual basis for the criticism, we held that where the only evidence of malice on the record was innuendo and speculation, a trial court must direct a verdict for the defendant.

Appellees rely upon *Airlie Foundation, Inc. v. Evening Star Newspaper Co.*, 337 F.Supp. 421 (D.D.C.1972), a case in sharp contrast to the one before us. There, the defendant published articles on two consecutive days alleging that the plaintiff's operations were financed by government agencies such as the Pentagon, the CIA, and the State Department. After the first article appeared, but before publication of the second, the editor of the defendant newspaper called the director of the CIA, who emphatically denied the story. Although admittedly shaken in his belief that the story was true, the editor published the second story. These facts led the court to say that a jury could find such reckless disregard of the truth as to imply malice.

### III.

■ The Hollands' basic argument here is that Ford Credit failed to comply with the proper procedures to insure fair and accurate credit reporting in that the words "Vehicle repossessed" were misleading, particularly in light of Ford Credit's knowledge that the Hollands disputed their obligation on the contract and the reason why they disputed it. They urge that from the failure to include an explanation of the dispute in the credit report the jury could properly find that Ford Credit acted with malice, or so recklessly and with such lack of regard for their rights as to imply malice. Applying the test of reasonableness, the Hollands are saying that a jury could plausibly find that the appellant did not believe the allegedly libelous statement to be true, and did not have reasonable grounds for such belief.

Even assuming that the phrase "Vehicle repossessed" when literally true could ever convey libelous connotations, however, there is no evidence in the record to support the Hollands' contention that the report was motivated by malice; thus, there is no issue of fact for resolution by the jury.

There is no dispute about what information was before Ford Credit's clerk at the time she made the credit report. The Hollands testified at trial that Ford Credit was aware at all times of their reasons for refusing to make any payments on the car and Ford Credit does not disclaim this knowledge. In addition, the Hollands' evidence proved that the clerk had before her information they had not made and did not intend to make any payments under their contract with Ford Credit; they were in default on their contract; the Camden Office of Ford Credit had been instructed to take possession of the vehicle; a notice of repossession dated August 5, 1970, informing them that the car had been repossessed and of their right to redeem it within fifteen days by making up the delinquent payments; a statement of sale showing that the car had been sold to a third party for $1,600, and that the proceeds of the sale had been applied to the balance due Ford

Credit; and a letter dated August 6, 1970 from Ford Credit advising Academy Ford that the car had been repossessed.

There was no evidence that the clerk was in possession of any other information which would lead her to believe or even suspect that all of the foregoing was not true. We fail to see, therefore, how it can be said that the credit report was sent with malice.

 At trial a Ford Credit employee, Mr. Luis Alonso, testified that it is standard procedure to notify the local credit bureau of a repossession; that it is, in fact, required by Ford Credit's manual. Nothing of record indicates that where the obligor disputes the obligation the clerk has a duty to investigate beyond the information in his or her possession before sending out the report. Furthermore, failure to investigate, by itself, does not establish bad faith. Nor is there anything indicating that when there is a dispute the clerk usually notes it in the report. In short, there is nothing even to show the clerk was inadvertently careless, much less reckless, in sending out the report without including an explanation of the Hollands' refusal to make payments.

It is not contended that the installment contract was invalid or unenforceable, or that the assignment to Ford Credit was not a good faith assignment. It is clear from the face of the contract that any claims the Hollands had concerning the property were to be settled with the original seller under appropriate warranties and that any such claims would not excuse their obligation to make the payments under the contract. *See Block v. Ford Motor Credit Co.,* D.C. App., 286 A.2d 228 (1972). Ford Credit notified them of their obligation and despite this the Hollands refused to pay and expressly disclaimed any further interest in the car.

It is clear, too, from the face of the contract that if the Hollands did not make their payments, Ford Credit would have the right to repossess the car. In light of all of this, the Hollands could not have reasonably expected that any credit information Ford Credit might provide to interested parties would say anything other than that the car was repossessed. The words do imply that the Hollands did not pay their debt, but they did not, in fact, pay their debt. The consequences were foreseeable. Even had the clerk examined these facts in detail, the credit report would still have been made in the belief that it was true, and with reasonable grounds to believe it was true.

We repeat: there is simply no evidence of record in this case to support a *finding* of malice. Accordingly, it was error for the trial judge to submit the question to the jury. Qualified privilege is a complete defense to this action in libel and the motion for judgment notwithstanding the verdict should have been granted.

*Reversed with instructions that judgment be entered for the defendant.*