**COLUMBIA FIRST BANK, Appellant,**

v.

**Connaelia M. FERGUSON, Appellee.**

**Connaelia M. FERGUSON, Appellant,**

v.

**COLUMBIA FIRST BANK, Appellee.**

Nos. 93–CV–1442, 93–CV–1527.

District of Columbia Court of Appeals.

Argued May 10, 1995.
Decided Sept. 28, 1995.

Joseph B. Scott, with whom Philip J. Simon, Washington DC, was on the brief, for Columbia First Bank.

W. Gary Kohlman, Washington DC, for Connaelia Ferguson.

Before FERREN and TERRY, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge:

Columbia First Bank appeals from the trial court's denial of its motion for judgment notwithstanding the verdict on one of two defamation claims brought by one of its former employees, Connaelia Ferguson. The trial court granted the bank's motion for judgment n.o.v. with regard to the other claim, and Ms. Ferguson appeals from that decision. We must decide whether the allegedly defamatory communications were protected by a qualified privilege and, if so, whether Ferguson produced sufficient evidence of malice to overcome the privilege. We hold that the communications were qualifiedly privileged and that Ferguson did not make a sufficient showing of malice; thus in both appeals we rule in favor of the bank.

I

Connaelia Ferguson was fired from her position as assistant branch manager at the Connecticut Avenue branch of Columbia First Bank for violations of the bank's Code of Conduct, including failure to disclose outside business interests, and acceptance and non-disclosure of substantial gifts from a bank customer. While working for Columbia First, Ms. Ferguson had obtained an insurance agent's license to sell insurance annuity contracts through the bank for Western National Life Insurance Company and had sold tax-deferred annuities worth about $300,000 to Esther Osin, an elderly customer of the bank. According to Ferguson and other bank employees, Columbia First encouraged its employees to visit customers' homes to sell these annuities, and it was not unusual for bank employees to develop close personal relationships with their clients.

In July 1990 Ferguson and other members of the Connecticut Avenue branch staff took Ms. Osin on a trip to Atlantic City. Shortly after the trip, Ms. Osin made Ferguson the irrevocable beneficiary of two annuity policies worth a total of $70,000. Ms. Osin also

designated one of the tellers at the Connecticut Avenue branch, Ruth Donahue, as the irrevocable beneficiary of another annuity worth $60,000.

On August 15, upon learning from Western National that two bank employees had been designated as beneficiaries of annuities, the bank began an investigation. In the course of that investigation, several bank officials, including Donna Knowles, a security officer, interviewed four Connecticut Avenue branch employees on August 23. From those interviews the bank officials learned that Ferguson had developed a close relationship with Ms. Osin and that she and Ms. Osin, along with other branch employees, had traveled to Atlantic City in July. Ferguson herself told the officials that after that trip, which she had helped to arrange, Ms. Osin had come into the bank and had requested some change of beneficiary forms. Ferguson said she was not aware that she had been made a beneficiary on the annuities until Ms. Osin later showed her the contract and insisted that she had not wanted to be a beneficiary. She also admitted, however, that she had told Ms. Osin to keep the change of beneficiary "quiet" and that she had not told her branch manager about it because she was afraid of losing her job.[1] Additionally, Ferguson told the bank officials that she had applied for a license as an agent to sell insurance products for USG, a California-based insurance company, without telling either USG or Columbia First of her affiliation with the other. The

bank fired Ferguson the next day, Friday, August 24, for "poor judgment and serious violations of the bank's Code of Conduct."[2]

On Monday, August 27, two bank vice presidents met with Ms. Osin at her apartment. Ms. Osin told them during that meeting that she had received the change of beneficiary forms from Ms. Ferguson and that Ferguson had helped her fill them out, addressed them, and mailed them for her. Ms. Osin also said that she had not intended to make Ferguson an irrevocable beneficiary and wished to change that designation.[3] Finally, Ms. Osin reported that on August 24 Ms. Ferguson, after she had been fired, had met with her and told her not to discuss what had happened with "anybody at the bank."[4]

On September 7 Donna Knowles, the security officer, learned from Ms. Osin's attorney that the previous day Ms. Ferguson had accompanied Ms. Osin to the bank and had been there with her while she withdrew approximately $40,000 from her account and cashed in some savings bonds. The attorney also reported that the checks embodying these transactions "were missing." When Ms. Knowles learned of these withdrawals and the missing checks, she called the Check and Fraud Section of the Metropolitan Police Department and spoke with Lieutenant Brooks Kelly. She informed Kelly about the withdrawals by "an elderly customer" and told him that Ferguson was involved in "a possible flim-flam."[5]

1. Susan Riel, one of the investigating officials, testified that on August 23 Ferguson told her she knew that allowing herself to be named an irrevocable beneficiary "was a code of conduct violation, and if she disclosed it, her employment would be terminated, so she chose not to."

2. The bank's Code of Conduct prohibits employees from accepting substantial gifts from customers except in limited circumstances, and requires an employee who receives something of value from a customer to "promptly disclose that fact in writing to the President and CEO of Columbia First."

3. At the August 23 session with the bank officials, Ms. Ferguson signed some forms authorizing Ms. Osin to remove her an an irrevocable beneficiary if she wished to do so. Ms. Osin's attorney testified that on August 24 ("but it could have been the 23rd") Ms. Ferguson called him in an effort to get those forms back. The attorney said

that Ferguson was "angry and upset" and that she threatened to "sue everybody that had any connection with the transaction" if the forms were not returned to her. He did not return the forms.

4. Ms. Osin did not testify at trial. Her statements to the bank officers were admitted as bearing on the reasonableness of the bank's conduct.

5. Ms. Knowles had previously been a Metropolitan Police officer herself. She agreed with the statement of Ferguson's counsel that "when one police officer speaks with another officer about flim-flam, they have some idea usually what they're talking about." Her purpose in calling the Check and Fraud Section, she said, was to ask them to investigate the events she reported. "I'm not telling them, when I make a statement, for sure a crime was committed. That's not my judgment call."

A few days later, on September 13, Ms. Knowles prepared a "Criminal Referral Form" for the Office of Thrift Supervision (OTS), an agency of the federal government, in which she recounted the bank's investigation of Ms. Ferguson's activities. On the pre-printed form, Ms. Knowles checked boxes next to the words "self-dealing" and "admission." She indicated "restitution" of $70,000, and next to the box marked "loss" she placed two asterisks referring the reader to a four-page narrative attached to the form. The narrative described in detail the results of the bank's investigation.

About a year later, on September 9, 1991, Ferguson filed a civil action against Columbia First Bank. In her complaint she alleged defamation, both in the report to the police and in the submission of the Criminal Referral Form to the OTS, as well as wrongful discharge and intentional infliction of emotional distress. After the wrongful discharge claim was dismissed, the case went to trial before a jury on the other claims. At the close of Ferguson's case in chief, the bank moved for a directed verdict, arguing that Ferguson had failed to prove either intentional infliction of emotional distress or defamation. The court granted the bank's motion with respect to the emotional distress claim but let the defamation claims stand.

At the close of its own case, the bank renewed its motion as to both counts of defamation, and the court took it under advisement pending the jury's verdict. Before instructing the jury, the court ruled that the allegedly defamatory statements made to both the OTS and the Metropolitan Police were protected by a qualified privilege. The court refused, however, to instruct the jury on punitive damages, holding that there was insufficient evidence to establish the requisite state of mind on which to base an award of punitive damages.

The jury returned a verdict in favor of Ms. Ferguson on both claims of defamation, awarding her $150,000 in compensatory damages.[6] The bank moved for judgment n.o.v. or, in the alternative, for a remittitur or a new trial. The court granted the bank's motion for judgment n.o.v. with respect to the statement made to the Metropolitan Police, but refused to set aside the jury's verdict based on the report to the OTS. The bank noted an appeal, and Ferguson noted a cross-appeal.

II

Columbia First challenges the trial court's denial of its motions for a directed verdict and for judgment n.o.v. on Ferguson's claim that the Criminal Referral Form sent to the OTS was defamatory. The bank asserts that neither the statements in that report nor the statements made to the Metropolitan Police were defamatory because they were substantially true.[7] In addition, the bank argues that since the statements were made to law enforcement authorities, they were protected by a qualified privilege and that Ferguson has failed to make the requisite showing of malice to overcome that privilege. The bank's position is that Ms. Knowles was acting within the scope of her duties as a security officer to protect a bank customer and to comply with banking regulations.

Ms. Ferguson, in her cross-appeal, challenges the trial court's grant of the bank's motion for judgment n.o.v. on the claim based on Ms. Knowles' statement to the Metropolitan Police. She argues that there was insufficient evidence of any wrongdoing on which to base either the call to the police or the report to the OTS. She emphasizes that the bank failed to take less drastic steps before calling the police and notes that Ms. Osin's missing checks were eventually found. She also contends that the OTS report accused her of self-dealing even though she denied knowing that Ms. Osin had made her a beneficiary and in fact did not want to be a

---

**6.** The jury attributed fifteen percent of the award to Ms. Knowles' oral statement to the Metropolitan Police and eighty-five percent to her written report to the OTS.

**7.** The bank also contends that the statements were not actionable because they referred only to

"suspected" criminal activity and were therefore mere expressions of "subjective opinion," not assertions of fact. Since we are deciding this case on other grounds, we need not reach this argument.

beneficiary. She argues that all of these factors amount to evidence that Ms. Knowles acted with malice. Ms. Ferguson further maintains that the court erred in refusing to submit her claim for punitive damages to the jury.

■ It has been settled ever since *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), that defamation actions, because they implicate the First Amendment, require the courts to be especially careful to avoid any infringement of the constitutional rights of an alleged defamer. Appellate courts, in particular, when a judgment for the plaintiff is under review, have "an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting *New York Times Co. v. Sullivan, supra*, 376 U.S. at 284–286, 84 S.Ct. at 728–729). That duty of independent review is "a constitutional responsibility that cannot be delegated to the trier of fact...." *Bose, supra*, 466 U.S. at 501, 104 S.Ct. at 1959. With these principles in mind, we consider the claims of error in this case.

■ We note at the outset that, to be actionable, the statements made by Ms. Knowles to the OTS and the Metropolitan Police must have been both false and defamatory. *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C.1995). Even if a statement is defamatory, however, it may be protected by a qualified privilege if it is "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which [she] has, or honestly believes [she] has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (citations omitted); *see Collins v. Brown*, 268 F.Supp. 198, 200 (D.D.C.1967) (Holtzoff, J.) (statement is qualifiedly privileged if there is "reasonable ground" for making it, "either in the legitimate interest of the person uttering it, or of the person to whom it is communicated"). Thus a qualified privilege exists when a statement about suspected wrongdoing is made in good faith to law enforcement authorities. *See, e.g., Curry v. Giant Food Co.*, 522 A.2d 1283, 1294–1295 (D.C.1987); *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C.1983); *Smith v. District of Columbia*, 399 A.2d 213, 221 (D.C.1979); *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1315 (D.C.1977). Whether a statement is protected by a privilege is a question of law for the court. *Mosrie v. Trussell, supra*, 467 A.2d at 477.

■ In this case we agree with the trial court that both the statement made by Ms. Knowles to the police and her report to the OTS were qualifiedly privileged. As a bank security officer, Ms. Knowles was responsible for investigating and reporting suspected criminal activity at Columbia First. As part of her training, she had been instructed by the Check and Fraud Section of the Metropolitan Police that, in order to avoid possible fraud, she should notify the police whenever substantial withdrawals were made from the accounts of elderly customers. She thus had a legitimate interest in making the statement, and the police had a legitimate interest in hearing it. *Smith v. District of Columbia, supra*, 399 A.2d at 221.

Ms. Knowles was also acting within the scope of her official duties when she reported the results of the bank's investigation to the OTS. A federal regulation requires federally insured savings banks, such as Columbia First, "to promptly notify the appropriate law enforcement authorities and the [OTS] after discovery of known *or suspected* criminal acts...." 12 C.F.R. § 563.180(d)(1) (1995) (emphasis added). This regulation specifically lists "fraud or attempted fraud" and "acceptance of things of value in connection with any transaction" as matters to be reported within fourteen days after they are discovered. *Id.* § 563.180(d)(2)(i), (ii). In making her reports to law enforcement authorities, Ms. Knowles was acting consistently with her training and was "performing in good faith what [she] reasonably perceived to be [her] assigned duty, an activity protected by qualified privilege." *Ford Motor Credit Co. v. Holland, supra*, 367 A.2d at 1315; *see also Waye v. First Citizens' Nat'l Bank*, 846

F.Supp. 310, 318 (M.D.Pa.1994) (privilege applied to bank when plaintiff claimed that bank's letter to the OTS referring to plaintiff's conduct as "fraud" was defamatory). We conclude, therefore, that both the referral to the OTS and the call to the police were protected by a qualified privilege. To hold otherwise would have the effect of eliminating the privilege altogether and would make it virtually impossible for financial institutions to take necessary steps to protect their customers.

■■■ "The qualified privilege is a complete defense to libel, but the defense is lost by the showing of malice." *Mosrie v. Trussell, supra,* 467 A.2d at 477 (citations omitted). Thus the dispositive issue in this case, as in most cases involving an assertion of qualified privilege, is whether there has been sufficient evidence of malice to overcome the privilege. When a statement is privileged, the declarant "will be presumed to have been actuated by pure motives in its publication," *Ashford v. Evening Star Newspaper Co.,* 41 App.D.C. 395, 405 (1914), and the plaintiff therefore has the burden of proving that the declarant acted with malice. *Ford Motor Credit Co., supra,* 367 A.2d at 1314. Moreover, unless the statement is so extreme, unreasonable, or abusive that a reasonable trier of fact would have to find malice inherent in the statement itself, malice must be proven by extrinsic evidence. *Moss v. Stockard, supra,* 580 A.2d at 1024.

■■■ This court has adopted the following definition of malice as it relates to qualified privilege in defamation cases:

> [Malice is] the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will.

*Dun & Bradstreet, Inc. v. Robinson,* 233 Ark. 168, 175, 345 S.W.2d 34, 38 (1961), cited with approval in *Ford Motor Credit Co., supra,* 367 A.2d at 1314.[8] But even a showing of ill will toward the plaintiff (which was not made in this case) "will not forfeit the privi-

lege so long as the *primary* purpose is to further the interest which is entitled to protection." *Mosrie v. Trussell, supra,* 467 A.2d at 477–478 (citations omitted; emphasis added). Thus, in deciding whether a particular statement is protected by a qualified privilege, we must "look[ ] to the primary motive by which the defendant is apparently inspired...." *Id.* at 477.

### A. The OTS Report

■■■ We first consider the report that Ms. Knowles made to the OTS following the bank's investigation of Ms. Ferguson's activities. The evidence shows that Ms. Knowles' primary motive in reporting the "possible flim-flam" to the Metropolitan Police and in filing the referral form with the OTS was to fulfill what she perceived to be her official duties. At trial she testified that she filed the report with the OTS because she understood that federal law required a bank to report all violations or suspected violations of any rule, regulation, or code of conduct governing bank employees. She also testified that she spent two days completing the form because she "wanted it to be right." Contrary to Ferguson's argument, this report was not "a case of pure 'rumor' or 'gossip' or 'scuttlebutt' conveyed as fact, without any disclaimer or explanation," *Sigal Construction Corp. v. Stanbury,* 586 A.2d 1204, 1215 (D.C.1991); rather, it was based on a thorough investigation by several bank officials. The report recounted that (1) Ms. Ferguson and other bank employees had accompanied Ms. Osin on a trip to Atlantic City; (2) shortly after that trip, Ms. Osin made Ferguson an irrevocable beneficiary of two annuities valued at $70,000; (3) by her own admission, Ferguson knew of Ms. Osin's action, asked Ms. Osin to keep her status as a beneficiary "quiet," and did not report the beneficiary change to the bank for fear of losing her job; (4) Ms. Osin did not intend to make Ms. Ferguson the beneficiary; (5) after she was fired, Ms. Ferguson accompanied Ms. Osin to the bank, where she made sub-

---

**8.** We also agreed in the *Ford* case with the proposition that "all definitions [of malice] in substance come down to the equivalent of 'bad faith.'" *Ford Motor Credit Co., supra,* 367 A.2d at 1314 (quoting *H.E. Crawford Co. v. Dun & Bradstreet, Inc.,* 241 F.2d 387, 395 (4th Cir. 1957)).

stantial withdrawals from her account and cashed some savings bonds; and (6) some of the checks from that transaction were reported missing, although they were later found. These facts, many of which were admitted by Ferguson, were also established by testimony at trial and were clearly sufficient to give rise to a suspicion of criminal activity warranting referral to the OTS pursuant to 12 C.F.R. § 563.180(d)(1).

■ Ferguson points to the fact that Ms. Knowles checked boxes on the OTS form for "self-dealing" and "restitution" in the amount of $70,000, and argues that the checking of these boxes reflects Knowles' belief that Ferguson stole the money. Assuming that it does, we deem it insufficient to show that Ms. Knowles was motivated by malice. In the first place, Ms. Knowles was working within the limitations of a printed form. Although the checked boxes could possibly lead the reader to the mistaken understanding that Ferguson stole the money, the reader was also referred by asterisks to the four-page narrative which clearly described the events that had led to the investigation and the filing of the report. *Cf. Ford Motor Credit Co., supra,* 367 A.2d at 1315–1316 (where qualified privilege applies, evidence that defendant followed standard procedures undercuts finding of malice). Furthermore, Ferguson's claim that the bank was mistaken is insufficient to establish that the report was made with malice; indeed, such a mistake would be inconsistent with a finding of malice. *See Curry v. Giant Food Co., supra,* 522 A.2d at 1295. "[A] mere characterization of certain conduct as malicious" does not create a jury question unless there is "evidence of actual malice." *Id.* (citation omitted).

■ We conclude that Ms. Ferguson did not meet her burden of showing that Ms. Knowles acted with malice. When there is insufficient evidence of malice to go to the jury, "it is the duty of the trial court to·direct a verdict for the defendant." *National Disabled Soldiers' League v. Haan,* 55 App.D.C. 243, 248–249, 4 F.2d 436, 441–442 (1925) (citations omitted). Consequently, we hold that the trial court erred in failing to direct a verdict for the bank on the claim involving the referral to the OTS.

### B. *The Report to the Metropolitan Police*

We turn now to Ferguson's cross-appeal, in which she argues that the trial court erred in granting the bank's motion for judgment n.o.v. on her claim that the statement made to the Metropolitan Police was defamatory. Again, Ferguson contends that the evidence was insufficient to justify allegations of criminal conduct. She notes that the missing checks were later found and argues that the bank could have taken other steps, such as stopping payment on the checks, instead of calling the police. She claims that all of this adds up to evidence that Knowles acted with malice. We disagree.

■ Contrary to Ferguson's assertion that the facts known to Ms. Knowles were insufficient to warrant a call to the police, we think it was entirely reasonable for Knowles to believe that Ferguson was involved in a "possible flim-flam." Ms. Knowles testified that in light of her own training on how to handle certain suspicious situations involving elderly customers, the facts surrounding Ms. Osin's change of beneficiary led her to believe that she was obligated to call the Metropolitan Police. She also testified that when she spoke with Lieutenant Kelly, she specifically told him that she was not sure whether a crime had been committed; "that's not my judgment call." Ms. Ferguson offered no evidence whatsoever to refute this testimony. Thus we hold that Ferguson failed to show that Knowles acted with malice when she told the police of Ferguson's involvement in a "possible flim-flam," and we affirm the trial court's order granting the bank's motion for judgment n.o.v. on this claim.

### III

■ Finally, Ferguson argues that the trial court erred in not allowing the jury to consider whether she was entitled to recover punitive damages. She argues that the evidence was sufficient to meet the standard of proof that our case law requires. *See, e.g., Robinson v. Sarisky,* 535 A.2d 901, 906 (D.C. 1988) ("punitive damages may be awarded for tortious acts aggravated by evil motive, actual malice, deliberate violence or oppres-

sion" (citation and internal quotation marks omitted)). Since we hold that Ferguson did not even prove the existence of malice sufficient to overcome a qualified privilege, she necessarily failed to meet the higher standard required for recovery of punitive damages. Moreover, because the bank is entitled to judgment on both of Ms. Ferguson's defamation claims, she cannot recover compensatory damages; consequently, she is barred from recovering punitive damages in any amount. *Bernstein v. Fernandez,* 649 A.2d 1064, 1073 (D.C.1991); *Zanville v. Garza,* 561 A.2d 1000, 1001–1002 (D.C.1989).

## IV

In Ms. Ferguson's appeal, No. 93–CV–1527, we affirm the trial court's order insofar as it grants judgment notwithstanding the verdict to the bank on the claim involving Ms. Knowles' call to the Metropolitan Police. In the bank's appeal, No. 93–CV–1442, we reverse the trial court's partial denial of the bank's motion for judgment n.o.v. and remand with directions to enter judgment for the bank on the claim that the report to the OTS was defamatory.

*Affirmed in part and reversed in part.*