Morufu A. ALADE and Feliz
Agunbiade, Plaintiffs,

v.

BORG–WARNER PROTECTIVE
SERVICES CORPORATION,
Defendant.

Nos. Civ.A. 98–0487 (JR), 98–0488 (JR).

United States District Court,
District of Columbia.

Nov. 9, 1998.

Paul S. Blumenthal, Washington, DC, for
Plaintiffs.

Theresa Hajost, Porter, Wright, Morris &
Arthur, Washington, DC, for Defendant.

## MEMORANDUM

ROBERTSON, District Judge.

Morufu A. Alade and Felix Agunbiade sued their former employer, Borg–Warner Protective Services, a Virginia-based security agency d/b/a Burns International Security Services ("Burns"). Both claimed that Burns improperly disseminated information about sexual harassment charges that had been brought against them. Burns moves for summary judgment in both cases, asserting that the communications in question were not defamatory and that in any event they are subject to a qualified "common interest" privilege that, in the absence of malice or excessive publication, is a complete defense to an action for defamation. Because the alleged communications were made only by and to persons sharing a common interest in Burns' sexual harassment policy, and because Alade and Agunbiade have neither produced evidence nor pointed to anything in the record that could support a jury finding of malice or excessive publication, Burns' motions must be granted.

### Background

Alade and Agunbiade were both security guards, employed by Burns and assigned to the World Bank. On February 14, 1997, Burns began an internal investigation into allegations that Alade and Agunbiade had sexually harassed a subordinate, Janice Byrd. The investigation was conducted by Abdul Wali, Burns' project manager at the World Bank. He interviewed several Burns employees, including Alade and Agunbiade.

On February 24, 1997, Wali submitted the results of his investigation to Burns' legal department and its district manager. Those results were discussed at a weekly meeting for Burns' managers assigned to the World Bank—Alade and Agunbiade's former peers. Alade and Agunbiade were absent from the meeting because they had been placed on administrative leave pending the investigation's conclusion.

On March 4, 1997, Alade and Agunbiade were fired. Soon thereafter, Gerald Waltman, Burns' on-site manager at the World Bank, announced that two security guards had been dismissed because they had violated Burns's sexual harassment policy. It is undisputed that the announcement was made at a meeting attended only by Burns employees, but there is a dispute about whether the names of Alade and Agunbiade were mentioned. Alade and Agunbiade, who did not attend, have produced no affidavits or other evidence to support their claim that their names were specifically mentioned. Waltman states that he did not refer to Alade or Agunbiade by name. Alade and Agunbiade argue that, even if Waltman did not refer to them by name, Waltman's statements must have been understood as references to Alade and Agunbiade because of gossip and the small size of the Burns workforce.

On February 25, 1998, each plaintiff filed a single-count complaint in the Superior Court for the District of Columbia, alleging defamation by defendant. Each plaintiff sought $250,000 for damage to his professional reputation and $100,000 for exemplary and punitive damages. Defendant removed both suits to this court on February 25, 1998.

### Analysis

■■■ A privilege has been recognized for a statement, otherwise defamatory, made by a person who shares a common interest with the person to whom the statement is made. *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990). This "common interest" privilege is an absolute defense to an action for defamation if the statement was made without malice or excessive publication. *Columbia First Bank v. Ferguson*, 665 A.2d 650, 655 (D.C. 1995); *Moss*, 580 A.2d at 1024. Where the facts relating to publication are undisputed, the question of whether or not a statement is privileged is one of law for the court. *Roland v. d'Arazien*, 685 F.2d 653, 655 (D.C.Cir.1982); *Moss*, 580 A.2d at 1024.

### "Common interest" privilege

■■■ The communications in issue in this case are protected by the common interest privilege. Wali and Waltman were communicating about subject matter in which they had an interest, or in reference to which they had, or honestly believed they had, "a duty to a person having a corresponding interest or duty." *Mosrie v. Trussell*, 467 A.2d 475

(D.C.1983). *See Elliott v. Healthcare Corp.*, 629 A.2d 6, 9 (D.C.1993) (supervisor's discussion with regional manager about technician's negligent maintenance of kidney dialysis machine); *Mosrie*, 467 A.2d at 477 (police captain's statements to superior about police officer's misconduct). The record reflects no dispute that Waltman and Wali were performing in good faith what they reasonably perceived to be their duty to enforce their employer's sexual harassment policy. *See Columbia First Bank*, 665 A.2d at 655; *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1315 (D.C.1977).

Further, the statements attributed to Waltman and Wali were made in an official company meeting, and only to other employees who were entitled to know the consequences of violating Burns' sexual harassment policy. *See Garziano v. E.I. Du Pont De Nemours & Co.*, 818 F.2d 380, 391 (5th Cir.1987) (noting that "[a]ll employees, not just supervisors, are subject to discharge for sexual harassment" and therefore have a legitimate interest in their employer's sexual harassment policy).

*Malice*

■■■ The common interest privilege is a qualified one and subject to forfeit for malice. The presence or absence of malice is a question of fact for the jury, but the plaintiff has the burden of proof. *See Mosrie*, 467 A.2d at 477; *Roland*, 685 F.2d at 655. Malice, in the context of a qualified privilege, is equivalent to bad faith, or "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." *Mosrie*, 467 A.2d at 477. Even if Burns bore actual ill will toward Alade and Agunbiade, however, its privilege would remain intact if Burns' primary purpose was to further its protected interest. *Columbia First Bank*, 665 A.2d at 656.

Wali conducted several interviews and, after offering Alade and Agunbiade a chance to refute the charges against them, submitted a written report to his superiors. Alade and Agunbiade assert that Wali was unqualified to conduct the investigation, but they cite no case authority for the proposition that an investigation must meet some objective standard of professionalism. The reasonableness of Wali's investigation depends on the facts as they reasonably appeared to Wali, *Ford Motor Credit*, 367 A.2d at 1314, and Alade and Agunbiade have produced no evidence that Wali lacked reasonable grounds for believing that the contents of his report were true.

As for Waltman's announcement, again there is no allegation or proof that he was not acting within his duty as a manager to clarify Burns' sexual harassment policy, or that he had reason to doubt the truthfulness of Wali's investigation or the good faith basis of his supervisors' decision to terminate Alade and Agunbiade.

*Excessive Publication*

■■■ Excessive publication can defeat the common interest privilege, but again the burden of proof lies with the plaintiff. Communications made to persons holding a common interest with Burns, or not reasonably calculated to protect or further that common interest, would be excessive publication. *See Moss*, 580 A.2d at 1024. There is no dispute that Burns' weekly supervisor's meetings and quarterly employee meeting were attended only by Burns personnel, or that Wali's investigation involved interviews only with Burns' employees. Alade and Agunbiade were not present at the meetings. Their suggestion that their names were mentioned inappropriately in one or more meetings is speculation, not evidence that would give rise to genuine issues of material fact. *See Mosrie*, 467 A.2d at 478.

Orders granting the defendant's motion for summary judgment are issued with this memorandum.